Filed 5/14/24  P. v. Sandoval CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STEVE SANDOVAL, Jr.,<br><br>    Defendant and Appellant. | D082063<br><br><br><br>(Super. Ct. No. SCS179252) |

APPEAL from an order of the Superior Court of San Diego County, Maryann D'Addezio, Judge.  Affirmed.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting, Felicity Senoski, and Kristen Ramirez, Deputy Attorneys General for Plaintiff and Respondent.

## I

## INTRODUCTION

In 2007, Steve Sandoval, Jr. pleaded guilty to voluntary manslaughter in connection with the fatal stabbing of 18-year-old Michael Thomas Owens. After the enactment of Senate Bill No. 1437 (2017–2018 Reg. Sess.), Sandoval filed a petition to vacate his voluntary manslaughter conviction and to be resentenced under former Penal Code section 1170.95.[1] The trial court found the record of conviction precluded relief as a matter of law. Therefore, it denied the petition without issuing an order to show cause.

Sandoval appeals the denial order and contends the record of conviction does not foreclose relief as a matter of law. We affirm.

## II

## BACKGROUND

A. *Factual Background*[2]

On September 22, 2003, the victim, Owens, and two companions went to a park in Chula Vista to shoot a paintball gun. At the park, they encountered a group of Hispanic men tagging "Westside Locos" on park property. Four of the men confronted Owens and his companions, asking them where they were from and what they were doing there. One companion said they were not from anywhere and they were there to shoot a paintball gun. One of the four men punched the companion in the face several times and another man took the paintball gun from Owens. Owens and his companions ran away and got separated from one another. Shortly after,

---

[1]    Further undesignated statutory references are to the Penal Code.

[2]    Portions of the factual background section are drawn from the probation report contained in the appellate record.

Owens was found a few blocks from the park suffering from a fatal stab wound to the back.

In 2004, the district attorney filed an information charging Sandoval and three codefendants with murder (§ 187, subd. (a); count 1); robbery (§ 211; count 2); participation in a criminal street gang (§ 186.22, subd. (a); count 3); and battery (§ 242; counts 4 and 5). The information included various gang enhancement and prior conviction allegations as to Sandoval (§§ 186.22, subds. (b)(1), (4), & (d), 667.5).

Sandoval pleaded guilty to one count of voluntary manslaughter (§ 192, subd. (a)), and admitted a prior serious felony conviction (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)), and a prior strike conviction (§§ 667, subds. (b)–(i), 1192.7, subd. (c)(23)), pursuant to a plea agreement with a stipulated prison sentence of 27 years. The court accepted the plea agreement and sentenced Sandoval to a 27-year prison term. However, our court reversed the judgment of conviction on grounds that Sandoval's guilty plea was involuntary. (*People v. Sandoval* (2006) 140 Cal.App.4th 111.)

On December 19, 2007, the district attorney filed an amended information adding a voluntary manslaughter charge (§ 192, subd. (a)) with a gang enhancement (§ 186.22, subd. (b)(1)) and an allegation that, in the commission of the crime, Sandoval personally used a deadly and dangerous weapon, to wit: a knife (§ 12022, subd. (b)(1)).

That same day, Sandoval pleaded guilty to the voluntary manslaughter charge and admitted the gang, weapon use, and prior conviction allegations in exchange for the dismissal of all other charges and a stipulated prison sentence of 22 years. For the factual basis of the plea, he admitted:

> "As a co-principal, I intentionally committed an act that caused the death of Michael Thomas Owens, further the natural consequences of that act were dangerous to human life and I

3

knew that at the time and deliberately acted with conscious disregard for human life. During the commission of that crime I acted in association with criminal street gang members with the specific intent of benefitting and promoting a criminal street gang as defined in Penal Code section 186.22 and I personally used a knife in the commission of the offense. I have been previously convicted of a crime that is a strike and a serious felony prior under California law, to wit: a violation of Penal Code section 245 wherein I personally used a deadly weapon."

The trial court accepted the plea agreement and sentenced Sandoval to 22 years in prison.

B. *Senate Bill No. 1437*

After Sandoval's judgment became final, the Legislature passed Senate Bill No. 1437, which went into effect January 1, 2019. The Legislature approved the law to address a perceived "need ... to more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1(b).) In so doing, it recognized that, "It is a bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability." (*Id.*, § 1(d).)

"With this purpose in mind, Senate Bill [No.] 1437 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1(f).) Outside of the felony-murder rule, 'a conviction for murder requires that a person act with malice aforethought. A person's culpability for murder must be premised upon that person's own actions and subjective mens rea.' (*Id.*, § 1(g).)" (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).)

"Senate Bill [No.] 1437 altered the substantive law of murder in two areas. First, with certain exceptions, it narrowed the application of the felony-murder rule by adding section 189, subdivision (e) to the Penal Code. Under that provision, 'A participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' (§ 189, subd. (e).)" (*Curiel, supra*, 15 Cal.5th at p. 448.)

"Second, Senate Bill [No.] 1437 imposed a new requirement that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder. (§ 188, subd. (a)(3).) 'Malice shall not be imputed to a person based solely on his or her participation in a crime.' (*Ibid.*) One effect of this requirement was to eliminate liability for murder as an aider and abettor under the natural and probable consequences doctrine." (*Curiel, supra*, 15 Cal.5th at p. 449.)

"Senate Bill [No.] 1437 also enacted former section 1170.95, which created a procedural mechanism 'for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief' where the two substantive changes described above affect a defendant's conviction." (*Curiel, supra*, 15 Cal.5th at p. 449.) Thereafter, the Legislature enacted Senate Bill No. 775, effective January 1, 2022, which ensured "that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are

permitted the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1(a).) A year later, "former section 1170.95 was renumbered as section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.)" (*Curiel*, at p. 449.) For the remainder of this opinion, we refer to this statutory provision as section 1172.6.

Under section 1172.6, a petitioner initiates the resentencing process by filing a declaration averring that: (1) a charging document was filed against the petitioner allowing the prosecution to proceed under a theory of felony murder, natural and probable consequences murder, murder under another theory by which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) the petitioner was convicted of murder, attempted murder, or manslaughter following a trial, or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder; and (3) the petitioner could not presently be convicted of murder or attempted murder because of the changes to the murder laws that were implemented by Senate Bill No. 1437. (§ 1172.6, subds. (a)(1)–(3), (b)(1).) If the petitioner states a prima facie case for relief, the court must issue an order to show cause and, in most cases, the court must schedule an evidentiary hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction, recall the sentence, and resentence the petitioner on any remaining counts. (*Id.*, subds. (c), (d)(1).)

At the evidentiary hearing, the prosecution bears the burden of proving, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under the amended laws. (§ 1172.6, subd. (d)(3).) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any

6

allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid.*)

C. *Resentencing Proceeding*

In 2022, Sandoval filed a petition to vacate his voluntary manslaughter conviction and to be resentenced.

On the preprinted petition form, Sandoval placed checkmarks next to statements that read, "1. A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. [Citation.] [¶] 2. I was convicted of murder, attempted murder, or manslaughter following a trial or I accepted a plea offer in lieu of a trial at which I could have been convicted of murder or attempted murder. [Citation.] [¶] 3. I could not presently be convicted of murder or attempted murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019." (Bold and underlining omitted.) The trial court appointed legal counsel to represent Sandoval in the resentencing proceeding.

The district attorney filed an initial response stating, "it appears that [Sandoval] falls within the provisions of [former] section [1170.95] and may be entitled to a hearing to determine whether he is entitled to relief." However, she cautioned that she had not yet received a certified copy of Sandoval's change of plea form from 2007. Therefore, she asked the court to "review [the] information [from the record of conviction] to determine whether petitioner ha[d] made the necessary prima facie showing."

Sandoval, acting through his appointed legal counsel, filed a reply in support of his petition for resentencing. He did not discuss whether the

7

record of conviction precluded resentencing as a matter of law, but he broadly claimed that he stated a prima facie case for relief and, therefore, he was entitled to an order to show cause.

The district attorney filed a supplemental response to the petition for resentencing, noting that her office had received a certified copy of Sandoval's 2007 change of plea form since the filing of the initial response to the petition for resentencing. She argued Sandoval's admissions from the factual basis portion of the 2007 change of plea form established he was a coprincipal in Owens' killing and he acted with implied malice. She contended he was ineligible for relief as a matter of law in light of these admissions.

Sandoval filed a supplemental reply in support of his petition for resentencing. Citing the preliminary hearing transcript, he argued he was prosecuted for Owens' murder solely under a felony murder theory of liability. He argued he entered the guilty plea, and admitted the factual basis for the plea, to avoid a felony murder conviction. According to Sandoval, the plea "did not necessarily match the facts[]" of the case; rather, it "was a legal fiction." For these stated reasons, Sandoval claimed the record of conviction did not preclude resentencing as a matter of law.

The trial court held a prima facie review hearing and denied the petition for resentencing without issuing an order to show cause. The court found the record of conviction—namely, the factual basis of the change of plea form—established that Sandoval remained in a class of defendants who would still be viewed as liable for murder under the state's current murder laws. In particular, it found Sandoval was a major participant in an underlying felony that resulted in death and he acted with reckless indifference to human life.

## DISCUSSION

When a court determines whether a petitioner has stated a prima facie case for relief under section 1172.6, its review is "limited." (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) " ' "[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' " (*Ibid.*)

" 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis, supra*, 11 Cal.5th at p. 971.) In other words, a court should deny a resentencing petition at the prima facie review stage "if the record of conviction conclusively establishes that the petitioner is ineligible for relief as a matter of law." (*People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1211 (*Gaillard*); *People v. Ervin* (2021) 72 Cal.App.5th 90, 101 [" 'A denial at that stage is appropriate only if the record of conviction demonstrates that 'the petitioner is ineligible for relief as a matter of law." ' "].) " 'This is a purely legal conclusion, which we review de novo.' " (*Ervin*, at p. 101.)

In the present case, it is uncontested that (1) a charging document was filed against Sandoval permitting the prosecution to proceed under a theory of felony murder, natural and probable consequences murder, or murder under another theory by which malice is imputed to him based solely on his participation in a crime; and (2) he accepted a plea offer in lieu of a trial at which he could have been convicted of murder. (§ 1172.6, subd. (a)(1)–(2).)

However, the parties dispute whether the record of conviction conclusively disproves Sandoval's claim that he "could not presently be convicted of murder ... because of [the] changes to Section 188 or 189" that were effectuated by Senate Bill No. 1437. (*Id.*, subd. (a)(3).)

"When the petitioner's conviction resulted from a guilty plea rather than a trial, the record of conviction includes the facts 'the defendant admitted as the factual basis for a guilty plea.' " (*Gaillard, supra*, 99 Cal.App.5th at pp. 1211–1212; see also *People v. Das* (2023) 96 Cal.App.5th 954, 960 ["The trial court ... could consider the record of conviction, including the stated factual basis for defendant's guilty plea, in determining whether defendant made a prima facie case for relief."]; *People v. Fisher* (2023) 95 Cal.App.5th 1022, 1029 (*Fisher*) [affirming summary denial of petition for resentencing based on petitioner's "express admissions at the plea colloquy"].) In some cases, like the present one, "the record may reveal that a defendant admitted *more* than the elements of the offense charged, and such additional admissions may preclude relief under section [1172.6]." (*People v. Rivera* (2021) 62 Cal.App.5th 217, 234 (*Rivera*); see also *People v. Saavedra* (2023) 96 Cal.App.5th 444, 449 (*Saavedra*) [petitioner ineligible for resentencing as a matter of law, where he "admitted more than the elements of the charged offenses" on his change of plea form].)

The People do not attempt to justify the trial court's finding that the record of conviction shows Sandoval was a major participant in an underlying felony who acted with reckless indifference to human life and, therefore, he is liable for felony murder under the state's amended murder laws. The People are wise not to defend this flawed reasoning. Nothing in the change of plea form, or in the wider appellate record, conclusively establishes that Sandoval is liable for felony murder under the current murder laws. However, " ' "we

10

review the [lower court's] ruling, not the court's reasoning and, if the ruling was correct on any ground, we affirm." ' " (*People v. Brooks* (2017) 3 Cal.5th 1, 39; accord *Curiel, supra*, 15 Cal.5th at p. 471 ["Although we do not consider the precise reasoning of the Court of Appeal, it was nonetheless correct to reverse the trial court's order" denying petition for resentencing].)

Exercising our de novo review of the summary denial order, we conclude the record of conviction—namely, Sandoval's admissions in the factual basis section of the change of plea form—conclusively establishes that he is not entitled to resentencing because he could still be convicted as the direct perpetrator of second degree implied malice murder under our state's amended murder laws. Under those laws, murder is defined as "the unlawful killing of a human being, or a fetus, with malice aforethought." (§ 187, subd. (a).) "For purposes of Section 187, malice may be express or implied." (§ 188, subd. (a).) "Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature." (*Id.*, subd. (a)(1).) "Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (*Id.*, subd. (a)(2).) "All murders committed with implied malice are of the second degree." (*Rivera, supra*, 62 Cal.App.5th at p. 231.)

A defendant can be liable for implied malice murder either as a direct perpetrator or an aider and abettor. (*People v. Powell* (2021) 63 Cal.App.5th 689, 711–712.) For purposes of direct perpetrator liability, "[m]urder is committed with implied malice when 'the killing is proximately caused by " 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.' " ' " (*People v. Reyes* (2023) 14 Cal.5th 981, 988 (*Reyes*); see *People v.*

11

*Glukhoy* (2022) 77 Cal.App.5th 576, 587–588 ["The elements of implied malice murder relative to the actual perpetrator are: '(1) [The perpetrator] intentionally committed an act; (2) the natural and probable consequences of that act were dangerous to human life; (3) At the time [the perpetrator] acted, [he/she] knew [his/her] act was dangerous to human life; and (4) [T]he perpetrator deliberately acted with conscious disregard for human life.' "].)

Sandoval expressly admitted on his change of plea form that, while acting as a co-principal, he "intentionally committed an act that caused the death of Michael Thomas Owens" and "the natural consequences of that act were dangerous to human life[.]"  Thus, he admitted the actus reus for implied malice murder.  (See *Reyes, supra*, 14 Cal.5th at p. 991 [" 'In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act.' "].)  Further, on his change of plea form, he explicitly stated he "knew that [the natural consequences of his act were dangerous to human life] at the time and deliberately acted with conscious disregard for human life."  Therefore, Sandoval acknowledged he harbored the mens rea for implied malice murder.  (See *In re Ferrell* (2023) 14 Cal.5th 593, 600 ["To establish the mental state required for implied malice, the defendant must deliberately perform the act with a conscious disregard for life, knowing the act endangers another's life."].)[3]

Through these admissions on the change of plea form, Sandoval conceded that he perpetrated implied malice murder.  As a result, he could

_____

[3]     Sandoval also admitted he "acted in association with criminal street gang members with the specific intent of benefitting and promoting a criminal street gang as defined in Penal Code section 186.22 and ... personally used a knife in the commission of the offense."  We do not rely on these admissions as the basis for concluding that Sandoval is ineligible for relief as a matter of law.

12

still be convicted of murder, notwithstanding the amendments that were implemented by Senate Bill No. 1437, and he is not entitled to an order to show cause.  (See *Fisher, supra*, 95 Cal.App.5th at pp. 1029–1030 [petitioner not entitled to order to show cause where he admitted shooting victims and killing two of them during plea colloquy]; *Saavedra, supra*, 96 Cal.App.5th at pp. 447–450 [petitioner ineligible for relief because he admitted on change of plea form that he tried to murder victims by shooting at their car]; *People v. Romero* (2022) 80 Cal.App.5th 145, 152–153 [petitioner's admissions in connection with no contest plea to murder charge foreclosed relief].)

IV

DISPOSITION

The order is affirmed.


McCONNELL, P. J.

WE CONCUR:


KELETY, J.


RUBIN, J.